UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

KURT SPRENGLE,                                          :

          Plaintiff,                              :

          v.                                        :      Civil Action No. 20-cv-1348

                                                    :

SMITH MARITIME INC.,                                    :

and                                                     :

TAUBÅTKOMPANIET AS; BOA OFFSHORE AS;                    :
BOA SHIPPING AS; BOA BARGES AS; BOA
MANAGEMENT AS; BOA OFFSHORE LLC,                        :

          Defendants.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff KURT SPRENGLE ("Kurt" or "Plaintiff"), as and for his complaint against

Defendants SMITH MARITIME INC. ("Smith Maritime"), TAUBÅTKOMPANIET AS; BOA

OFFSHORE AS; BOA SHIPPING AS; BOA BARGES AS; BOA MANAGEMENT AS; and

BOA OFFSHORE LLC (collectively, "BOA," and, with Smith Maritime, "Defendants"), by and

through his attorneys Berg & Androphy, states and alleges as follows:

## NATURE OF THE ACTION

1.      This action arises from Defendants' gross negligence in operating their vessels

and reckless disregard for the men and women who toil at sea and ashore who make those

vessels run.

2.      Kurt *was* an able-bodied seaman with at least 20 years' experience, almost all of

which he spent as an employee of Smith Maritime.  On January 26, 2019, while Kurt's crew was

getting ready for departure, a pick-up line – a pick-up line far too thin, frayed and poorly maintained – parted while pulling an enormous pennant chain connected to one of BOA's barges ("*BOABARGE 29*").  The remnants of that pick-up line struck Kurt in the face, causing him to suffer severe facial, dental and cranial damage.

## PARTIES

3.      Plaintiff is a natural person domiciled in the State of Florida, residing in Flagler County at 2019 South Flagler Avenue, Flagler Beach, Florida 32136.

4.      Defendant Smith Maritime is a Florida for-profit corporation, having its principal place of business at 967 Bulkhead Road, Green Cove Springs, Florida 32043.

5.      Defendant Taubåtkompaniet AS is a Norwegian business entity with its office and principle place of business at Strandveien 43, 7067 Trondheim, Norway.  Upon information and belief, it is the parent company of Defendant Boa Offshore AS, and owns, controls, operates and/or manages *BOABARGE 29* and/or its crew.

6.      Boa Offshore AS is a Norwegian business entity with its office and principle place of business at Strandveien 43, 7067 Trondheim, Norway.  Upon information and belief, it is the parent company of the Boa Offshore Group, and owns, controls, operates and/or manages *BOABARGE 29* and/or its crew.

7.      Boa Shipping AS is a Norwegian business entity with its office and principle place of business at Strandveien 43, 7067 Trondheim, Norway.  Upon information and belief, it is a member of the Boa Offshore Group and the parent of Defendants Boa Barges AS and Boa Management AS and owns, controls, operates and/or manages *BOABARGE 29* and/or its crew.

8.      Boa Barges AS is a Norwegian business entity with its office and principle place of business at Strandveien 43, 7067 Trondheim, Norway.  Upon information and belief, it owns, controls, operates and/or manages *BOABARGE 29* and/or its crew.

3

9.      Boa Management AS is a Norwegian business entity with its office and principle place of business at Strandveien 43, 7067 Trondheim, Norway.  Upon information and belief, it owns, controls, operates and/or manages *BOABARGE 29* and/or its crew.

10.     Boa Offshore LLC is a Delaware limited liability company, having its principal place of business at 580 Westlake Park Boulevard, Suite 1150, Houston, Texas 77079.  Upon information and belief, Boa Offshore LLC is a United States subsidiary of Defendant Boa Offshore AS and it owns, controls, operates and/or manages *BOABARGE 29* and/or its crew.

## JURISDICTION AND VENUE

11.     Plaintiff brings a civil negligence claim against Smith Maritime under the Jones Act.  This Court thus has jurisdiction pursuant to 46 U.S.C. § 30104.

12.     Plaintiff brings maritime negligence claims against Smith Maritime and BOA. This Court thus has jurisdiction under 28 U.S.C. § 1333.  Plaintiff makes this designation as required by Rule 9(h) of the Federal Rules of Civil Procedure.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(3) as Smith Maritime's principal place of business is in this district.  Many of the witnesses who will be called to testify also reside in or near this district.  Further, upon information and belief, Smith Maritime and BOA each owe each other a contractual duty of indemnification, which Smith Maritime would invoke and interplead BOA into this action if BOA were not already a party.

## FACTUAL ALLEGATIONS

### I.    Background

14.     Smith Maritime provides ocean towing and maritime salvage services.  It operates a fleet of tugboats that transport goods primarily between the United States and South America, Central America and the Caribbean.  The goods are transported primarily on barges towed by the tugboats.  Those barges are usually owned by third parties.

15.     According to its website, BOA is "established as one of the leading providers of support services to the marine and offshore oil, gas and wind industry."  As is pertinent here, BOA maintains a fleet of heavy-deck barges specialized for transporting large and especially weighty loads.

16.     Kurt has been an Able-Bodied Seaman Unlimited ("AB Unlimited") since 2001. He has tirelessly worked for Smith Maritime since 2005 as a crew member on any of Smith Maritime's tugboats.  Those voyages varied in length from weeks to months.

17.     As an AB Unlimited, Kurt's job duties included, but were not limited to, ship maintenance, safety inspections, starting and stopping boat engines, standing watch in the wheelhouse and engine room, engine maintenance, ship navigation (under supervision), cooking for the crew and maintaining supplies.

## II.     "Vicious hit!  Fucking shit rope!!"

18.     On January 26, 2019, Kurt was engaged in his duties as an AB Unlimited onboard *Elsbeth II*, a tugboat owned and operated by Smith Maritime.  At that time, *Elsbeth II* was docked in Amelia, Louisiana with a crew of six, including Kurt.  *Elsbeth II* was preparing to deliver an empty barge bound for Cartagena, Colombia.  Upon information and belief, the barge in question was *BOABARGE 29*, which, according to BOA's website, is 124 meters in length and has a capacity of 17,500 tons deadweight (a measure of how much weight a vessel can carry).[1]

19.     *Elsbeth II* sails under the flag of the United States and, on information and belief, is registered in Palatka, Florida.

20.     The accident in question occurred when the crew was "making up tow," which means attaching the barge to the tugboat.  This is accomplished by taking the bridle (a V-shaped

---

[1] *See* BOABarge 29, https://www.boa.no/fleet/boabarge-29/ (last visited on November 12, 2020).

chain that is attached to both the port and starboard sides of the barge) from the barge, attaching it to the pennant chain (generally a 90-foot chain that attaches to the apex of the bridle's V-shape), and attaching the pennant chain to the towline.  The pick-up line, as the name suggests, is attached to and used to hold and to maneuver the pennant chain.  Each link in the pennant chain weighs, upon information and belief, approximately 80 pounds.

21.     The towline is then spooled around a large drum, and then the pick-up line is wrapped around the cathead (essentially, a spool).  The boat's captain then starts the cathead turning, while another crewmember wraps the pick-up line around it.  Once enough of the pennant chain has been pulled onto the tugboat, it is secured by the crew so that the towline can be attached to the pennant chain, which is then shackled in place.

22.     As the crew of *Elsbeth II* was making up tow for its voyage to Cartegena, the ship's captain was operating the cathead, standing right above Kurt.  The first mate was also "running the deck" on *Elsbeth II*, meaning that he was overseeing the process of making up tow.

23.     To start the process, two BOA employees standing on the barge threw a pick-up line (the "Faulty Pick-Up Line") to the *Elsbeth II* crew.  The Faulty Pick-Up Line was then brought aboard and handed to Kurt by one of Smith Maritime's employees; Kurt was assigned to assist spooling the Faulty Pick-Up Line around the cathead.  Upon receipt of the Faulty Pick-Up Line, both Kurt and the first mate noticed that the line was insufficiently thick for the job and was also visibly very worn and frayed.  Kurt objected to the size, quality and fitness of the Faulty Pick-Up Line, but the BOA crew insisted that the Faulty Pick-Up Line was "the one we use all the time; just use it."

24.     In fact, *Elsbeth II's* crew threw the Faulty Pick-Up Line back to the BOA crew, insisting that it was unsafe.  The BOA crew, in turn*, threw the Faulty Pick-Up Line back to the Elsbeth, refusing to substitute it.*

6

25.      Time is of the essence when making up tow.  Before departure, the crew must request a harbor pilot in advance and provide precise times of departure – a schedule which must be met.  Neither the first mate, nor the captain (who was standing right above Kurt), ultimately intervened – when the BOA crew threw back the Faulty Pick-Up line, the *Ellsbeth II's* crew proceeded to make up tow and Kurt had no choice but to do his job, which was to spool the Faulty Pick-Up Line around the cathead.

26.       When the pennant chain was just 10 feet from being sufficiently on deck, BOA's Faulty Pick-Up Line parted, with one end violently recoiling and striking Kurt directly across the face (the "Accident").  He immediately lost consciousness and had to be airlifted to Baton Rouge, where he remained hospitalized with severe injuries for *ten* days.

27.      Kurt sustained devastating injuries to his skull, including numerous facial fractures.  His nose was pulverized, one of his eyes was significantly damaged and his teeth were effectively destroyed.  Kurt has not been released back to work, nor is it even likely that he can ever return to work as an AB Unlimited.  It has been over 18 months since the Accident and Kurt continues to suffer unending dental and maxillofacial problems.  He also suffers from unyielding emotional trauma, neuropathy, post-traumatic stress and has recently developed both violent night terrors and other issues from the constant pain and stress resulting from his injuries and inability to return to work.

28.      To allow the *Elsbeth II* to make up tow with a visibly worn, frayed and paltry pick-up line, when that the pick-up line would be used to maneuver a pennant chain weighing hundreds of pounds, was an act of gross negligence and callous disregard for the lives and safety of all the seamen aboard the *Elsbeth II*.

29.      Smith Maritime utterly failed to meet its duty of care to Kurt.  Both the captain and first mate of the *Elsbeth II* knew, or should have known, that the Faulty Pick-Up Line was

too thin and too frayed for its intended purpose, yet neither stopped the process of making up

tow, even though the crew initially threw the Faulty Pick-Up Line back to the BOA crew over

safety concerns.  That the Faulty Pick-Up Line would pose a grave danger to seamen on deck

should that Faulty Pick-Up Line part, as it did here, was plainly foreseeable.  Thus, Smith

Maritime failed in its duty to provide Kurt a reasonably safe workplace.

30.     Remarkably, in May 2020, Smith Maritime's principal, Latham Smith, sent a text

message to Kurt confirming this which read, in pertinent part:  "Vicious hit!  Fucking shit

rope!!"

31.     Indeed, there is no real question of negligence, nor is there any question as to

Kurt's right to bring this action under the Jones Act and under general maritime law.[2]

32.     BOA also breached its duty of care to Kurt.  Providing an undersized and poorly

maintained Faulty Pick-Up Line to secure a pennant chain weighing hundreds of pounds was an

abrogation of that duty.  That such an unworthy line would part under tension, and part in the

vicinity of crewmembers either on BOA's vessels or others, was completely foreseeable.  That

BOA ignored warnings about the Faulty Pick-Up Line and refused to replace it was an act of

gross negligence.

33.     Upon information and belief, BOA and Smith Maritime were or are parties to a

contract under which Smith Maritime provides towing services for BOA.  Upon further

---

[2]  Kurt has received maintenance and cure benefits from Smith Maritime since the Accident
through the date of this Complaint, though should that change, Kurt reserves his right to amend
this Complaint accordingly.  Curiously, the maintenance and cure servicer ("Aucoin") seized the
Faulty Pick-Up Line several months after the Accident from the boatyard where it had been
stored and, upon information and belief, still maintains custody thereof.  That seizure occurred
soon after counsel first contacted Aucoin to discuss Kurt's maintenance and cure benefits.  Prior
to filing this action, counsel sent Aucoin an evidence preservation notice and Plaintiff reserves
his right to bring claims against Aucoin for spoliation.

information and belief, that contract contains an indemnification clause and if BOA were not

sued in this action, Smith Maritime would interplead them into this Action.

## COUNT I

**(Damages:  Negligence Jones Act – Smith Maritime)**
**(Civil claim)**

34.     Plaintiff re-alleges the allegations of Paragraphs 1 through 33 of this Complaint as

if all of those allegations were specifically stated in this cause of action.

35.     On January 26, 2019, while engaged in the process of making up tow, the Faulty

Pick-Up Line parted, striking Kurt in the face, resulting in devastating injuries.

36.     At the time of the Accident, Kurt was an AB Unlimited, with at least 20 years'

experience.  Kurt was employed by Smith Maritime and was assigned to work as a crewmember

aboard Smith Maritime's tugboat, the *Elsbeth II*.

37.     Smith Maritime knew, or should have known, that the Faulty Pick-Up Line was

completely inappropriate for use in making up tow.  Smith Maritime failed in its duty to provide

Kurt a reasonably safe work environment.  That negligence was the direct and proximate cause

of the severe injuries Kurt sustained from the Accident.

38.     As a result of Smith Maritime's negligence, Plaintiff has sustained, and will

continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the

enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning

capacity and medical expenses.

39.      By reason of the foregoing, Plaintiff is entitled to a judgment against Smith

Martime for compensatory damages in an amount to be determined at trial, together with costs,

interest  and any other relief this Court deems just.

## COUNT II

### (Damages:  Negligence – Smith Maritime)
### (Maritime Claim)

40.     Plaintiff re-alleges the allegations of Paragraphs 1 through 33 of this Complaint as if all of those allegations were specifically stated in this cause of action.

41.     On January 26, 2019, while engaged in the process of making up tow, the Faulty Pick-Up Line parted, striking Kurt in the face, resulting in devastating injuries.

42.     At the time of the Accident, Smith Maritime had a duty to Kurt to operate its vessels in a safe manner and to provide its crews with a reasonably safe work environment. Smith Marine breached that duty when it allowed its crew, including Kurt, to use the Faulty Pick-Up Line to make up tow.  Smith Maritime knew or should have known that the Faulty Pick-Up Line was dangerously deficient.

43.     In fact, Smith Maritime knew the Faulty Pick-Up Line was unsafe – its crew threw the line back to the BOA crew.  Smith Maritime breached its duty to Kurt when, despite knowing of the dangerous condition of the Faulty Pick-Up Line, it nonetheless allowed the crew to continue making up tow with the Faulty Pick-Up Line.  That negligence was the direct and proximate cause of the severe injuries Kurt sustained from the Accident.

44.     As a result of Smith Maritime's negligence, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

45.     By reason of the foregoing, Plaintiff is entitled to a judgment against Smith Maritime for compensatory damages in an amount to be determined at trial, together with costs, interest and any other relief this Court deems just.

10

## COUNT III

### (Damages:  Negligence – BOA)
### (Maritime Claim)

46.     Plaintiff re-alleges the allegations of Paragraphs 1 through 33 of this Complaint as if all of those allegations were specifically stated in this cause of action.

47.     On January 26, 2019, while engaged in the process of making up tow, the Faulty Pick-Up Line parted, striking Kurt in the face, resulting in devastating injuries.

48.     BOA provided the crew of the *Elsbeth II* with the Faulty Pick-Up Line.  BOA provided that Faulty Pick-Up Line to make up tow on an enormous BOA barge.  BOA's employees refused to provide a replacement line, shrugging off the patently obvious danger the Faulty Pick-Up Line caused to Kurt and the crew of the *Elsbeth II.*

49.     At the time of the Accident, BOA had a duty to tugboat crewmen, like Kurt, to provide safe, appropriately-gauged and well-maintained gear (*i.e.,* proper lines).  Indeed, without the rigorous efforts of those tugboat crews, BOA's barges would be little more than flotsam.

50.     BOA breached its duty to Kurt when it provided, and then insisted, that the Faulty Pick-Up Line be used to make up tow on one of its leviathan barges.  Even when the crew of the *Elsbeth II* objected to the quality of the line and threw it back, BOA refused to provide a proper pick-up line and insisted that the *Elsbeth II* proceed with the Faulty Pick-Up Line.  That negligence was the direct and proximate cause of the severe injuries Kurt sustained from the Accident.

51.     As a result of BOA's negligence, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

52.     By reason of the foregoing, Plaintiff is entitled to a judgment against BOA for compensatory damages in an amount to be determined at trial, together with costs, interest and any other relief this Court deems just.

## COUNT IV

**(Damages:  Gross Negligence – Smith Maritime)**
**(Maritime Claim)**

53.     Plaintiff re-alleges the allegations of Paragraphs 1 through 33 of this Complaint as if all of those allegations were specifically stated in this cause of action.

54.     On January 26, 2019, while engaged in the process of making up tow, the Faulty Pick-Up Line parted, striking Kurt in the face, resulting in devastating injuries.

55.     At the time of the Accident, Smith Maritime had a duty to Kurt to operate its vessels in a safe manner and to provide its crews with a reasonably safe work environment. Smith Marine breached that duty when it nonetheless allowed the crew to continue making up tow with the Faulty Pick-Up Line.

56.     Smith Maritime knew the Faulty Pick-Up Line was unsafe and a clear and present danger – its crew threw the line back to the BOA crew.  Smith Maritime acted with gross negligence (and indeed, willful, wanton and reckless indifference) towards Kurt's safety when, despite knowing of the dangerous condition of the Pick-Up Line, the crew continued to make up tow.  That negligence was the direct and proximate cause of the severe injuries Kurt sustained from the Accident.

57.     As a result of Smith Maritime's gross negligence, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical expenses.

58.     By reason of the foregoing, Plaintiff is entitled to a judgment against Smith Martime for compensatory damages in an amount to be determined at trial, together with an award of punitive damages, costs, interest and any other relief the Court deems just.

**COUNT V**

**(Damages:  Gross Negligence – BOA)**
**(Maritime Claim)**

59.     Plaintiff re-alleges the allegations of Paragraphs 1 through 33 of this Complaint as if all of those allegations were specifically stated in this cause of action.

60.     On January 26, 2019, while engaged in the process of making up tow, the Faulty Pick-Up Line parted, striking Kurt in the face, resulting in devastating injuries.

61.     BOA provided the crew of the *Elsbeth II* with the Faulty Pick-Up Line.  BOA provided that Faulty Pick-Up Line to make up tow on an enormous BOA barge.  BOA's employees refused to provide a replacement line, shrugging off the patently obvious danger the Faulty Pick-Up Line caused to Kurt and the crew of the *Elsbeth II*.

62.     At the time of the Accident, BOA had a duty to tugboat crewmen, like Kurt, to provide safe, appropriately-gauged and well-maintained gear (*i.e.,* proper lines).  BOA breached its duty to Kurt when it provided, and then insisted, that the Faulty Pick-Up Line be used to make up tow on one of its leviathan barges.  Providing the Faulty Pick-Up Line in the first place, and then refusing to replace it when warned of its clear and present danger, was an act of gross negligence (and indeed, an act of willful, wanton and reckless indifference to crew safety).  That negligence was the direct and proximate cause of the severe injuries Kurt sustained from the Accident.

63.     As a result of BOA's gross negligence, Plaintiff has sustained, and will continue to sustain in the future, pain, suffering, mental anguish, the loss of capacity for the enjoyment of

13

life, inconvenience, disability, the loss of income, the loss of future earning capacity and medical

expenses.

64.    By reason of the foregoing, Plaintiff is entitled to a judgment against BOA for

compensatory damages in an amount to be determined at trial, together with and award of

punitive damages, costs, interest and any other relief this Court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment and grant the

following relief:

(a)    On Count I, judgment against Smith Maritime for compensatory damages, in an

amount to be determined at trial;

(b)    On Count II, judgment against Smith Maritime for compensatory damages, in an

amount to be determined at trial;

(c)    On Count III, judgment against BOA, in an amount to be determined at trial;

(d)    On Count IV, judgment against Smith Martime, in an amount to be determined at

trial, together with punitive damages;

(e)    On Count V, judgment against BOA, in an amount to be determined at trial,

together with punitive damages;

(f)    Reimbursement of costs and expenses incurred by Plaintiff in prosecuting this

action;

(g)    Prejudgment interest at the maximum legal rate; and

(h)    An award of such other relief as this Court may deem just.

14

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims asserted in this Complaint that

are triable to a jury.

DATED:  Jacksonville, Florida
                  November 30, 2020

                                                            Respectfully submitted,


                                                            By: /s/ Chris L. Sprengle_____
                                                                 Chris L. Sprengle, Trial Counsel
                                                                 Florida Bar ID No. (147930)
                                                                 Berg & Androphy
                                                                 80 S.W. 8th Street, Suite 2000
                                                                 Miami, Florida 33130
                                                                 Tel: (646) 766-0073
                                                                 Fax: (646) 219-1977
                                                                 csprengle@bafirm.com

                                                                 *Attorney for Plaintiff*

15