**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KURT SPRENGLE,

      Plaintiff,

v.                                                             Case No. 3:20-cv-1348-MMH-JRK

SMITH MARITIME INC. and
BOA BARGES LLC,

      Defendants.
_____

# **O R D E R**

## **I. Status/Background**

This cause is before the Court on Defendant Smith Maritime, Inc.'s Motion to Strike Portions of Second Amended Complaint and Demand for Jury (DE 23) and Memorandum of Law (Doc. No. 25; "Motion"), filed March 22, 2021. Plaintiff responded in opposition to the Motion on April 1, 2021. See Plaintiff's Opposition to Defendant Smith Maritime Inc.'s Motion to Strike Portions of the Second Amended Complaint (Doc. No. 31; "Response").

Plaintiff is suing Defendants Smith Maritime, Inc. ("SMI") and Boa Barges, LLC ("BOA") alleging that they were negligent and grossly negligent. See Second Amended Complaint and Demand for Jury Trial (Doc. No. 23; "SAC"), filed March 8, 2021, at 7, 8, 9.[1] The SAC alleges as follows. SMI

---

[1] For ease of reference, citations to the SAC follow the pagination assigned by the Court's electronic filing system (CM/ECF).

provides ocean towing and maritime salvage services; and it operates "a fleet of tugboats that transport goods primarily between the United States and South America, Central America, and the Caribbean." SAC at 3. Beginning in 2005, Plaintiff worked for SMI as a crew member on its tugboats. Id. On January 26, 2019, Plaintiff was working on a tugboat called the *Elsbeth II* that was preparing to tow and "deliver an empty barge" to Cartagena, Colombia. Id. at 3-4.

Plaintiff's accident, which gives rise to this action, occurred when "the crew was 'making up tow,' which mean[t] attaching the [empty] barge to the [*Elsbeth II*]." Id. at 4. "Making up tow" is accomplished by taking a bridle (a V-shaped chain) from the barge, attaching it to a pennant chain (a 90-foot chain that attaches to the bridle) and then attaching the pennant chain to the towline. Id. The "pick-up line" (essentially a rope) is "attached and used to hold and to maneuver the pennant chain." Id. The towline is then "spooled around a large drum, and then the pick-up line is wrapped around the cathead (essentially, also a spool)." Id. The boat's captain then "starts the cathead turning, while another crewmember wraps the pick-up line around it." Id. Finally, when enough of the pennant chain is pulled onto the tugboat, the crew secures it so the towline can be attached to the pennant chain. Id.

"As the crew of [the] *Elsbeth II* was making up tow for its voyage to Cart[a]gena, the ship's captain was operating the cathead" and standing right above Plaintiff. Id. Starting the tow process, "two BOA employees standing on

2

the barge threw a pick-up line" to SMI's crew, who then gave the pick-up line to Plaintiff and another crewmate. Id. at 5. Upon receiving the pick-up line, "both [Plaintiff] and the first mate noticed that the line was insufficiently thick for the job and was also visibly very worn and frayed." Id. The SAC then states that SMI's crew threw the faulty pick-up line back to BOA's crew, who then threw the pick-up line back to SMI's crew. Id.

Despite this back-and-forth, the *Elsbeth II* crew continued to "make up tow," and Plaintiff continued to "spool" the pick-up line around the cathead. Id. Apparently, when the "pennant chain was just 10 feet from being sufficiently on deck," the pick-up line "parted, with one end violently recoiling and striking" Plaintiff directly across the face. Id. Plaintiff immediately lost consciousness and was airlifted to a hospital in Baton Rouge, Louisiana. Id. As a result of the accident, Plaintiff suffered "severe facial, dental and cranial damage." Id. at 2. In May 2020, after his accident, SMI's principal, Latham Smith, sent Plaintiff a text message that stated "[v]icious hit!" Id. at 6. The text message also made a profane comment about the pick-up line. Id.

Stemming from this accident, Plaintiff brings one claim at law against SMI for "Negligence Jones Act" (Count I); and two maritime claims against BOA for "Negligence" (Count II) and "Gross Negligence" (Count III). See id. at 7, 8, 9. The SAC also states that "upon information and belief, [SMI] and BOA each owe each other a contractual duty of indemnification, which [SMI] would invoke

3

and interplead BOA into this action if BOA were not already a party." Id. at 3; see also id. at 7.

## II. Parties' Arguments

In the Motion, SMI requests the Court to strike certain words, phrases, and paragraphs of the SAC for "being immaterial, improper and scandalous allegations." Motion at 1. Specifically, SMI moves the Court to strike: 1) certain words and/or portions of paragraphs 1, 11, and 23 (containing descriptors); 2) the title of section II (on page three) and all of paragraph 25 (containing profane language); and 3) paragraph 8 (the last sentence) and all of paragraph 27 (relating to the indemnification agreement). Id. at 2.[2] In support of these requests, SMI asserts that these portions of the SAC are "improper" and "impertinent and immaterial to any cause of action that can be alleged in this [case] and 'have no possible relation to the controversy and may cause prejudice to one of the parties.'" Id. at 3-4 (citation omitted).

Responding, Plaintiff points out that SMI "acknowledge[s] that motions to strike are disfavored." Response at 1. Plaintiff asserts that the Motion "does not explain how anything in the SAC is immaterial, improper or scandalous," but that instead, SMI "expects Plaintiff in [his Response] and the Court in its deliberations to connect the dots." Id. at 1-2.

---

[2] The portions of the SAC that SMI challenges are addressed in detail below. See infra pp. 5-10.

4

## III. Discussion

Rule 12, Federal Rules of Civil Procedure ("Rule(s)"), states that the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are considered "drastic remedies" and are generally "disfavored by courts," and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). When deciding a motion to strike, "a court must accept the truthfulness of well-pleaded facts and cannot consider matters beyond the pleadings." Id.

"An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." State Farm Mut. Auto. Ins. v. Advantacare of Fla., LLC, No. 6:19-cv-1837-CEM-LRH, 2020 WL 2630226, at *11 (M.D. Fla. May 22, 2020) (unpublished) (citation omitted). "'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Id. (citation omitted).

**A. The Descriptors (Paragraphs 1, 11, and 23)**

As mentioned above, SMI asks the Court to strike certain words and phrases from paragraphs 1, 11, and 23. The three paragraphs are addressed separately below, with the portions that SMI seeks to strike underlined for clarity.

5

Paragraph 1 of the SAC states, "This action arises from Defendants' negligence in operating their vessels <u>and reckless disregard for the men and women who toil at sea and ashore who make those vessels run.</u>" SAC at 1, ¶ 1. SMI offers no argument as to how this portion of paragraph 1 is "immaterial, impertinent, or scandalous" or how it is prejudicial to one of the parties. The challenged language will not be struck on the ground that SMI objects to the phrasing of it. See <u>Brown v. Cnty. of Nassau</u>, No. 16-CV-54 (LDW)(AYS), 2016 WL 4995283, at *9 (E.D.N.Y. Sept. 19, 2016) (unpublished) (stating that "the fact that such descriptive language makes [the d]efendants uncomfortable does not require that it be struck" (citation omitted)). As a motion to strike is a "drastic remedy," <u>Thompson</u>, 211 F. Supp. 2d at 1348, the Court declines to strike the underlined portion of paragraph 1. See <u>Brown</u>, 2016 WL 4995283, at *4, *9 (stating that "allegations that 'a complaint may be characterized as 'overly narrative,' or containing 'generalized statements or matters of opinion' are insufficient to support a Rule 12(f) motion to strike" (citation omitted)).

Paragraph 11 states, in part, that Plaintiff "has <u>tirelessly</u> worked for [SMI] since 2005 as a crew member on any of [SMI]'s tugboats" and that "[t]hose voyages varied in length from weeks to months." SAC at 3, ¶ 11. The use of the word "tirelessly" apparently describes Plaintiff's view of his dedication to SMI throughout his employment. Again, SMI does not offer any specific argument as to why this word could be prejudicial or irrelevant, and the Court declines to exercise its discretion to strike it. See <u>Brown</u>, 2016 WL 4995283, at *4, *9.

6

Regarding paragraph 23, SMI requests the following underlined phrase to be stricken:

> To allow the *Elsbeth II* to make up tow with a visibly worn, frayed and paltry pick-up line, when [ ] the pick-up line would be used to maneuver a pennant chain weighing hundreds of pounds, was an act of <u>gross negligence and callous</u> disregard for the lives and safety of all the seamen aboard the *Elsbeth II*.

SAC at 6, ¶ 23. The phrase "gross negligence and callous" directly relates to Count III of the SAC. See id. at 9 (Count III, alleging gross negligence against BOA). Thus, these words will not be stricken. See Fed. R. Civ. P. 12(f); Thompson, 211 F. Supp. 2d at 1348.

## B. Profane Language (title of section II and paragraph 25)

The title of section II (on page three) and paragraph 25 (in its entirety) reference a text message that SMI's principal, Mr. Smith, allegedly sent Plaintiff after his accident. SMI argues that they "have no relevance" and are "impertinent as well as inflammatory and scandalous, and would likely be inadmissible" in Court. Motion at 4.

After review, the allegations are relevant to Plaintiff's claims that both Defendants were allegedly negligent in using the supposedly faulty pick-up line. The language used in these sections of the SAC is, according to Plaintiff, a direct quote from a text message that he received from Mr. Smith (SMI's principal) after Plaintiff's accident. See SAC at 6. As noted, the message in part states, "[v]icious hit!" and the rest of the message is a profane comment on the poor quality of the rope. The text message, which references the pick-up line that

struck Plaintiff, speaks to the fact that Plaintiff was hit by said pick-up line and appears to convey Mr. Smith's opinion, at the time of the text message, of the condition of the pick-up line. Id.

Additionally, the allegations do not meet the definition of "scandalous," as they do not "unnecessarily reflect[ ] on the moral character" of SMI or "state[ ] anything in repulsive language that detracts from the dignity of the court." See State Farm Mut. Auto. Ins., 2020 WL 2630226, at *11. Specifically, these portions of the SAC do not "unnecessarily reflect on the moral character" of SMI as it is a word-by-word reproduction of a relevant text message, and Plaintiff makes no comment about SMI in a derogatory manner. Although the title of section II and paragraph 25 do use "repulsive language," it does not detract dignity from the Court. See Wermann v. Excel Dentistry, P.C., No. 13 CIV. 7028 DAB, 2014 WL 846723, at *6 (S.D.N.Y. Feb. 25, 2014) (unpublished) (denying a motion to strike because "[a]lthough the remarks are profane . . . they are relevant to [the p]laintiff's gender discrimination claims . . . and do not meet the high threshold for a Rule 12(f) motion"). Thus, the Court declines to strike the title of section II and paragraph 25 as they are relevant to Plaintiff's claims, and are neither "scandalous" nor prejudicial to SMI.

Although SMI argues about the admissibility of the text message, the Motion does not state how or why this is a ground for the Court to strike the profane language. Regardless, the Court need not decide whether Plaintiff may eventually use this text message as evidence as the issue of admissibility is not

8

before the undersigned. See Chavarria v. Intergro, Inc., No. 8:17-cv-2229-SDM-AEP, 2018 WL 3427848, at *3 (M.D. Fla. July 16, 2018) (unpublished) (denying a motion to strike an affidavit based on arguments that the affidavit contained inadmissible hearsay because the defendants "conflate what is required for summary judgment with what is required in the pleadings" as the "evidentiary burden that [the d]efendants assume . . . does not exist at this stage in the proceedings").

**C.   Indemnification Agreement (Paragraphs 8 and 27)**

Finally, paragraphs 8 (the last sentence) and 27 (in its entirety) mention a contractual agreement of indemnification between SMI and BOA. See SAC at 3, 7. Specifically, SMI seeks to strike the following:

> Further, upon information and belief, [SMI] and BOA each owe each other a contractual duty of indemnification, which [SMI] would invoke and interplead BOA into this action if BOA were not already a party.

Id. at 2-3, ¶ 8.

> Upon information and belief, BOA and [SMI] were or are parties to a contract under which [SMI] provides towing services for BOA. Upon further information and belief, that contract contains an indemnification clause and if BOA were not sued in this action, [SMI] would interplead them into this action.

Id. at 7, ¶ 27. As mentioned above, SMI argues that these references to the indemnification agreement are "irrelevant" and "potentially prejudicial" and have "no legal relevance to the claims" asserted by Plaintiff. Motion at 4. However, SMI offers no more explanation as to how the mentioning of an

9

indemnification agreement between SMI and BOA is "irrelevant" and "potentially prejudicial."

As to relevance, the alleged indemnification agreement evidently covers the accident alleged in the SAC, and is thus not so "irrelevant" as to warrant striking. It is also unclear, based on the Motion and the SAC, how the potential indemnification agreement is prejudicial (to SMI) as to warrant striking. Therefore, the Court declines to use its discretion to strike these portions of the SAC. See Martin v. PartsBase, Inc., No. 20-80235-CIV, 2020 WL 8226839, at *1 (S.D. Fla. Nov. 10, 2020) (unpublished) (stating that "[c]ourts should not tamper with the pleadings unless there is a strong reason for so doing" (citation omitted)).

### IV. Conclusion

In sum, the Motion is due to be denied as the challenged language is not "redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). Moreover, these portions of the SAC are relevant to Plaintiff's claims and will not cause prejudice (to SMI) as to warrant striking. Accordingly, it is

**ORDERED**:

1. Defendant Smith Maritime, Inc.'s Motion to Strike Portions of Second Amended Complaint and Demand for Jury (DE 23) and Memorandum of Law (Doc. No. 25) is **DENIED**.

2. Defendant Smith Maritime, Inc. shall have up to and including **June 2, 2021** to answer Plaintiff's Second Amended Complaint and Demand for Jury Trial (Doc. No. 23).

**DONE AND ORDERED** in Jacksonville, Florida on May 19, 2021.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

keb
Copies:
Counsel of Record